State ex rel. Meyers Co. v. Raynolds, Judge. 22 N. M. 474.

HANNA, C. J., and ROBERTS, J., concur.

---

[No. 1937. March 22, 1917.]

STATE ex rel. MEYERS CO. v. RAYNOLDS, Judge.

### SYLLABUS BY THE COURT.

1. By section 3 of article 6 of our Constitution there is conferred upon the Supreme Court a superintending control over all inferior courts and the power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction, and all other writs necessary or proper for the complete exercise of its jurisdiction.                P. 478

2. In all matters resting within the jurisdiction of an inferior court, and upon which it has acted in a judicial capacity, this court will refuse to review its proceedings or to revise its rulings in the absence of a showing of gross abuse of discretion, or inadequacy of remedy by appeal.        P. 478

Robert, J., dissenting in part

Original mandamus by the State of New Mexico, on relation of the Meyers Company, against Herbert F. Raynolds, Judge, etc. Rule discharged.

RENEHAN & WRIGHT of Santa Fe and MARRON & WOOD of Albuquerque for relator,

H. C. MILLER of El Paso, Tex., for respondent.

State ex rel. Meyers Co. v. Raynolds, Judge, 22 N. M. 473.

## STATEMENT OF FACTS.

This is an action in mandamus, brought in this court on the relation of the Meyers Company, against Hon, Herbert F. Raynolds, district judge of the Second judicial district. The petition for the writ, without referring to formal matters, is predicated upon the following facts:

On April 8, 1914, a complaint was filed in the district court of Bernalillo county by Ernest Meyers against the Meyers Company. About a year later an amended complaint in the same cause was filed, which was subsequently demurred to; the demurrer being overruled. The cause of action sued on was predicated upon the fact that the Meyers Company had been carrying on its books for some time a credit in favor of Alex D. Shaw & Co., of New York, of $501.88, which, it was claimed by Ernest Meyers, was not a legal liability of the Meyers Company, and at the time when he sold his interest in said company he provided by a contract between himself and the purchasers of his interest that, whenever the Meyers Company should thereafter be released from liability to the said Shaw & Co. for the balance carried on the books, that such amount should be credited to himself, and that he should thereafter be entitled to demand and receive such amount, but that he should not be entitled to demand or receive payment thereof until the claim of said Shaw & Co. had been "legally extinguished or abandoned." The complaint filed by Mr. Meyers asserted that the claim had been legally extinguished, in that it was barred by the statute of limitations, and that Shaw & Co. had assigned "any claim it may have had" in the said sum to the plaintiff, Ernest Meyers, the plaintiff therefore seeking to recover the amount of this account, which had been carried on the books of Meyers & Co. as a balance due Shaw & Co.

Issue was joined by the filing of an answer, and the cause proceeded to trial before a jury. During the course of the trial Francis E. Wood, attorney for the Meyers Company, introduced in evidence a release signed by Ernest Meyers in favor of Shaw & Co., and in this connection it is asserted that in so doing he made representations concerning the character of this release which amounted to

fraud, and that at the time he had knowledge of the fact that the release was of no validity, force, or effect.

Thereafter, at the close of the defendant's evidence, Mr. Wood moved the court to direct a verdict in favor of the defendant, on the following grounds: First, that the contract sued on was neither made nor ratified by the defendant; second, assuming that it had been, the claim of Shaw & Co. had never been legally discharged or abandoned, but, on the contrary, still existed as binding as it had ever been; third, that the complaint showed no indebtedness of the Meyers Company to the plaintiff; and, fourth, that the plaintiff's claim had been settled, satisfied, and discharged.

This motion was sustained by the court, and a verdict directed for the defendant. Plaintiff promptly filed a motion for a new trial, and later a supplemental motion, neither of which motions were acted upon at that term. A new trial was subsequently granted, but the court's attention being directed to the question of jurisdiction to grant a new trial at that time, the order was set aside.

At the following term of court the plaintiff filed a further motion, setting up that the defendant had procured the alleged release from Meyers by false and fraudulent representation, and that the plaintiff's attorney had offered it in evidence with full knowledge of such representations.

A motion to strike this latter motion was interposed, and the matter came on to be heard before the court upon the two motions on April 22, 1916, at which time the district court made an order setting aside the verdict and granting a new trial, upon the ground that the release offered in evidence was offered as proof of payment, and that such offer was a fraud upon the court, because defendant's attorney knew that the claim had not been actually paid. Thereafter the Meyers Company, through its counsel, Mr. E. R. Wright, interposed a motion to vacate and set aside the order setting aside the verdict and ordering a new trial, and for a judgment in favor of the defendant upon the verdict of the jury previously rendered, upon the following grounds: That the facts before the court and appear-

ing from the record and papers on file in the case, and the facts occurring on trial thereof, as appears from the minutes of the official stenographer reporting the case, show that the court was compelled by the record and the testimony given upon such trial to direct a verdict in favor of the defendant; that the verdict was predicated upon the ground that the contract sued upon was not the contract of the defendant, nor ratified nor adopted by it; that if it were the contract of the defendant it conclusively appeared from the record that the claim of Shaw & Co. against the Meyers Company had never been legally discharged or abandoned according to the terms of the contract annexed to the complaint; that the facts before the court when it set aside the verdict upon the ground of fraudulent imposition on the court were wholly insufficient in matter of law to warrant the court in finding that any fraud or imposition was practiced upon the court in said case; that the granting of said motion was a gross and unwarranted abuse of discretion and unauthorized exercise of power; that the court upon the facts before it had neither power nor discretion to set aside the verdict and award a new trial of said cause, and, even if the court misunderstood or was misled or deceived by the facts set forth in its opinion, the court would still be compelled upon the record as presented to have directed a verdict for this defendant upon other questions; and, lastly, because the complaint in said cause failed to state any cause of action.

The petition for the writ concludes with a general allegation that petitioner is without a speedy, adequate, or any, remedy at law to compel the court to enter a judgment in its favor upon the verdict of the jury; that it is compelled without warrant or authority of law to submit to a further trial of the cause, the court being without right or discretion to grant the motion of the plaintiff for a new or further trial, and that the exercise of such asserted right by the court constitutes gross abuse of power or discretion, if any such discretion existed in the court; that the record in the case fails to show that the court

was warranted on the facts in finding that any fraud or imposition had been practiced upon the court, for which reason the petitioner is entitled to the judgment upon the verdict of the jury.

It does not appear from the petition for the writ that the last-mentioned motion of petitioner, seeking the setting aside of the order setting aside the verdict of the jury, has ever been disposed of by the district court.

The return of the district judge, so far as it is necessary for us to give consideration thereto, denies that relator, the Meyers Company, is without speedy and adequate remedy at law, and sets up certain facts upon which the court predicated its conclusion that the directed verdict had been obtained by reason of the fraudulent conduct of attorney for the defendant, asserting that the said release was believed by the trial court to be a bona fide release and proof of the payment of said claim of plaintiff against the defendant, as it was so represented to be before the court and jury by the said Francis E. Wood, and that the district judge, relying upon such representations, directed the verdict referred to for the defendant, which was subsequently returned, and which was afterwards set aside upon the motion interposed by counsel for plaintiff, wherein it was charged that the said counsel for defendant had perpetrated fraud upon the court.

The honorable district judge, in the final paragraph of this return, asserts that the motion to vacate and set aside the instructed verdict was called for hearing before him as judge of the Second judicial district of New Mexico, within and for the county of Bernalillo, and that respondent, as judge of said court, and after considering the affidavits filed by the plaintiff, hearing the argument of counsel, and considering the briefs filed by the respective parties and by Francis E. Wood individually, granted said motion to vacate and set aside the instructed verdict, and reinstateed the cause upon the ground that the said verdict was procured through deceit and fraud knowingly and intentionally practiced upon the court by the said Francis E. Wood as attorney for the defendant, all of

which respondent alleges were judicial acts of the district court of the Second judicial district of New Mexico.

HANNA, C. J. (after stating the facts as above.) From the statement of facts it appears that relator seeks, by mandamus, to compel the district judge of the Second judicial district for the county of Bernalillo to sign and enter judgment in his favor upon the verdict of the jury rendered by said court's direction at the March, 1915, term of said court.

[1] By section 3 of article 6 of our Constitution there is conferred upon the Supreme Court a superintending control over all inferior courts and the power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction, and all other writs necessary or proper for the complete exercise of its jurisdiction.

[2] The Constitution of the state of Wisconsin contains a provision similar to that of ours, which has been construed by the Supreme Court of that state, some members of that court holding that the power of superintending control is unlimited and unrestrained; that it extends to judicial and ministerial errors; that it includes control of the proceedings of inferior courts; that said court may, upon writs framed by itself to meet the special purpose and in the nature of writs of mandamus, direct the vacation of orders erroneously made, may direct the inferior court to proceed in a legal and proper manner, and may control discretion of the inferior court, where that discretion has been abused, in the denial of legal rights. It has also been held by some of the judges that the power extends to correcting errors in judicial proceedings where it is necessary to prevent injustice and the demand is urgent and will not admit of delay. Bailey on Habeas Corpus, p. 862; State ex rel. Umbreit v. Helms, 136 Wis. 432, 118 N. W. 158.

The leading case in Wisconsin upon the subject is State ex rel. v. Johnson, 103 Wis 591, 79 N. W. 1081, 51 L. R. A. 33. To the last citation is appended an extensive note where numerous authorities are collected, considering the various phases of the question.

State ex rel. Meyers Co. v. Raynolds, Judge, 22 N. M. 473.

In this Wisconsin case it is held that under the superintending power given the Supreme Court by the Constitution that court may by mandamus compel an inferior court to perform a duty imposed by statute which is not discretionary in its nature, and may also compel action in cases where discretion is to be exercised, when it clearly appears such discretion has not been exercised, or that action has been taken in manifest disregard of duty or without semblance of legal power, and where it further appears that there is no remedy by appeal, or that such remedy, if existing, is entirely inadequate, and the exigency is of such an extreme nature as to justify the interposition of such extraordinary superintending power. See, also, State v. Judge of Civil District Court, 52 La. Ann. 1275, 27 South. 697, 51 L. R. A. 71; People v. Court, 27 Colo. 405, 61 Pac. 592, 51 L. R. A. 105; State ex rel. v. Judge, etc., 35 La. Ann. 873.

The foregoing statement from the Wisconsin case of State ex rel. v. Johnson is no more than a broad statement of the general principles governing the jurisdiction of the Supreme Court in the exercise of its superintending control. Like all other statements of general principles, the application thereof to concrete cases presents much difficulty. In most of the cases to which our attention has been directed the court has considered the matter from but one standpoint, and has applied but one portion of the rule which has been broadly stated supra. The Wisconsin cases referred to are of particular value in our consideration of this question, by reason of the fact that they cover the entire field of the question of superintending control by the superior over the inferior tribunal.

Later cases are collected in a case note found appended to the case of State ex rel. Francis E. McGovern v. Orren T. Williams 136 Wis. 1, 116 N. W. 225, 20 L. R. A. (N. S.) 941.

From the statements of the general rule as announced in the Wisconsin case, State v. Johnson, supra, it is evident that this court in the exercise of its superintending control could by mandamus direct the district court to act,

even though the right to obtain a review by appeal or writ of error existed, where such remedy is entirely inadequate, but in this case there is no attempt to do more than to assert that the remedy by appeal is inadequate, no showing as to the alleged inadequacy of the remedy being attempted or made.

For this reason we conclude that the circumstances do not justify the issuance of the writ applied for.

We do not understand that it is contended by relator that there was no jurisdiction in the district court to enter the order vacating the verdict of the jury. This seems to be admitted. A careful examination of the petition and the argument of counsel seems to indicate that the essential objection of relator is based upon the alleged absence of right or discretion in the district court to grant the motion of the plaintiff for a new or further trial, and that the exercise of such asserted right constitutes a gross abuse of such power or discretion.

The argument of counsel is primarily directed to the point that the action of Mr. Wood in introducing the evidence in question did not constitute a perpetration of fraud. It becomes a question of fact and is argued as such. Affidavits pro and con were introduced, all of which were before the court, and in his conclusion he has resolved this question against the contention of relator. In so doing he has doubtless exercised judicial discretion, and if such discretion was abused his action is subject to review by appeal.

We have examined the entire record before us carefully without finding the condition which is argued to exist by the relator, namely, that there was no evidence of fraud. Our conclusion is to the contrary.

In view of these conditions were are under the necessity of holding that there is no merit in relator's contention that a gross abuse of judicial discretion has been presented for our consideration. This being our opinion and conclusion, the rule must be discharged; and it is so ordered.

PARKER, J., concurs.

ROBERTS, J. (Dissenting in part.) If by the majority opinion it is the purpose to follow the rule adhered to in Missouri (Smith & Keating Imp. Co. v. Wheeler, 27 Mo. App. 16, and cases cited), and to hold that, where a trial court improperly grants a new trial, the complaining party may protect his right by excepting to the action of the court, and taking no further part in the cause until final judgment is entered against him, appeal to this court, and secure a review of the action of the court in awarding a new trial, I can concur; for I believe the form of the remedy is not so important so long as a remedy is afforded. I do not agree that relief should be denied merely because the petitioner has failed to point 'out wherein the remedy by appeal is inadequate. The right to review the action of the court in setting aside the verdict by appeal either exists or does not exist. If there is no such right, the allegation in the petition that "petitioner is without a speedy, adequate, or any, remedy at law," is sufficient to invoke the remedy, if it be true, as alleged, that no fraud or deception was practiced upon the court and no evidence of such fraud appears.

While thus concurring in the statement of the law applicable to this case, for the reason above stated, I cannot give my assent to the conclusion upon the facts as set forth in the majority opinion. In view of the rule of law announced by the majority of the court, no discussion of the facts was necessary, but because the opinion sets forth the views of the majority as to the facts, I believe I would be shirking my duty if I failed to set forth my view in regard thereto, formed after a careful and painstaking consideration of the record.

In this connection, and before proceeding further, I desire to state that I do not entertain the slightest doubt as to the honesty of purpose and good faith of Judge Raynolds in setting aside the verdict, but I do believe that he entertained an erroneous view as to the propriety of Mr. Wood's action and motive in offering in evidence the release in question.

In order that my view may be more clearly understood,

it is perhaps advisable that I should state the facts as I gather them from the record in this case.

In the year 1912 Ernest Meyers, of Albuquerque, owned all the capital stock in a corporation capitalized at $30,000, engaged in the liquor business in that city. In the month of January he entered into a contract with Alphons Mathiew and Stephen E. Roehl by the terms of which he sold to said parties two-thirds of such capital stock, which, of course, gave them control and management of the company. The contract was in writing and was carefully drawn by skillful lawyers, and contained extensive provisions specifically prescribing the rights and duties of the respective parties as stockholders in such company. Among other provisions the contract contained the following provision:

"The Meyers Company is carrying upon its books a credit to L. B. Shaw & Co. of New York amounting to $501.88, which it is claimed by the party of the first part is not a legal liability of the Meyers Company, and that the Meyers Company will never be called upon by the said L. B. Shaw & Co. to pay the same. Now, whenever the Meyers Company shall be released from liability to the said L. B. Shaw & Co. for the said balance of $501.88, the said credit shall be transferred on the books of the Meyers Company to the credit of the said party of the first part, and he shall be thereafter entitled to demand and receive the same; but the said party of the first part shall not be entitled to demand or receive payment of the said balance until the claim of the said L. B. Shaw & Co. therefor has been legally extinguished or abandoned."

Shaw & Co. neglected to bring suit on its claim or to press the same for payment until after the same had been barred in this state by the statute of limitation.

That Ernest Meyers disputed the validity of this claim is readily inferable from the above-quoted clause of the contract. For some time prior to March 29, 1913, Shaw & Co. had been pressing Meyers & Co., the corporation, and Ernest Meyers, as an individual, for payment, as shown by letters filed here as exhibits. The company refused to pay because it alleged that, if it should make payment without its liability having been established, it would be liable to refund to Ernest Meyers the money

JANUARY TERM, 1917.        483

State ex rel. Meyers Co. v. Raynolds, Judge, 22 N. M. 473.

which it held as indemnity. Apparently Ernest Meyers had become hostile to the corporation, and was desirous of securing the adjustment of matters so that he could secure the money returned under the contract, or have paid it to Shaw & Co., with whom he had become quite friendly

On September 10, 1913, Meyers and Co., in reply to a letter from Shaw & Co. urging settlement, wrote them a letter, from which I quote the following:

"If you can secure us the proper release from Ernest Meyers, or if you can give us a bona fide legal bond which would hold us harmless in case any action was taken by Ernest Meyers, this question of liability might be considered."

On October 29th and November 7th the following letters were written by Shaw & Co. to Meyers & Co.:

"New York, Oct. 29, 1913.
"The Meyers Co., Inc., Albuquerque, N. M.
"Dear Sirs: We are pleased to enclose you herewith copies of Mr. Ernest Meyers' letter to us of the 4th inst., our reply to him of the 9th inst., and his letter to us of the 21st inst. We are writing him today as per copy enclosed herewith, all of which are self-explanatory. We hope, therefore, to forward you this release within the course of the next ten days.

"We trust that with this various correspondence which has passed between Mr. Meyers and ourselves that you will be convinced that there is not as you state 'a nigger in the woodpile.' We appreciate, however, the position you take, and it is not only our desire to have the question settled financially, but we are just as anxious to convince you of our sincerity and good faith. We remain,
                "Yours very truly."

"New York, Nov. 7, 1913.
"The Meyers Co., Inc., Albuquerque, N. M.
"Dear Sirs: We are pleased to enclose you herewith the release mentioned in our letter of the 29th ult., duly signed by Ernest Meyers.

"Trusting that you will give the matter your very kind attention, we remain,
                "Yours very truly."

The release referred to was as follows:

"Albuquerque, N. M., Nov. 1, 1913.
"Whereas, by article 8 of the contract between the Meyers Company, Incorporated, of Albuquerque, N. M., and myself, dated January 1, 1912, said company is required to make a

certain payment to me in the matter of Alex D. Shaw & Co., of New York, on the happening of certain events therein stated:

"Now, therefore, in consideration of the sum of one dollar and other valuable consideration to me in hand, receipt of which is hereby acknowledged, I hereby release said Meyers Company from any payment to me of the sum of $501.88 or any part thereof mentioned in said article 8 as a credit to said Alex D. Shaw & Co.

[Signed] "Ernest Meyers."

Apparently no reply was made by the Meyers Company to the Shaw & Co. letter inclosing the release. A subsequent letter was written on December 4, 1913, by Shaw & Co. to the Meyers Company, calling attention to the letter of November 7th, and asking for a remittance. On December 27th, 1917, Meyers & Co. wrote Shaw & Co., stating that the matter had been placed in the hands of their attorneys, Messrs. Marron & Wood, and asking that any further communication regarding the matter be addressed to Marron & Wood. Whether any letters passed between Messrs. Marron & Wood, and Shaw & Co. is not apparent from the record, but no remittance was made by Meyers & Co. to Shaw & Co. Later, on the 21st day of April, 1914, Alex D. Shaw & Co. executed the following assignment, so-called, to Ernest Meyers:

"State of New York, County of New York.

"Know all Men by These Presents: We, Alex D. Shaw & Co., a copartnership, for and in consideration of the sum of one dollar in hand paid by Ernest Meyers, of Albuquerque, Bernalillo county, New Mexico, the receipt whereof is hereby acknowledged and confessed, have assigned, set over and quitclaimed, and by these presents do hereby assign, set over, and quitclaim, unto the said Ernest Meyers, all our right, title, and interest, claim, or demand against the said Ernest Meyers or the Meyers Company, a corporation organized and existing under and by virtue of the laws of the State of New Mexico in and to the sum of five hundred one and 88-100 ($501.88) dollars recently on deposit with the Meyers Company for the payment of certain account against the Meyers Company, Incorporated, for merchandise, which account against Alex D. Shaw & Company we are informed and believe has been barred by the statute of limitations."

This assignment was acknowledged before a notary public. Thereafter, in April, 1914, Ernest Meyers instituted

a suit in the district court against the Meyers Company
to recover the sum of $501.88, in which complaint it was
alleged that Ernest Meyers deposited this money with the
Meyers Company, and that such sum should be left with
said company until any claim that said Alex D. Shaw &
Co. might have in and to said sum should be legally ex-
tinguished or abandoned and the said defendant released
from liability to the said Alex D. Shaw & Co., and a copy
of the agreement was attached to the complaint as an ex-
hibit.  The complaint further set up the assignment from
Shaw & Co. to Ernest Meyers, attaching the same as an ex-
hibit to the complaint.  To the complaint Meyers & Co.
filed a demurrer, one of the grounds set forth being that
"it does not appear that the account against this defend-
ant in favor of Alex D. Shaw & Co. as specified in para-
graph 8 of said contract has ever been legally extinguished
or abandoned."  The demurrer was overruled, and an an-
swer was filed.  When the case was called for trial, Mr.
Wood, attorney for Meyers & Co., objected to the introduc-
tion of any evidence on the ground that the complaint
failed to state sufficient facts to constitute a cause of ac-
tion.  It being his contention that Shaw & Co. had no in-
terest whatever in the $501.88 deposited with Meyers &
Co., that Shaw & Co. had only a claim against the cor-
poration, as such, and that the purported assignment at-
tached as an exhibit to the complaint showed clearly that
Shaw & Co. had not released or extinguished its original
indebtedness against Meyers & Co., and that in this Shaw
& Co. had undertaken only to release its interest in the
fund on deposit in which it had no interest.

The answer pleaded payment.  When Ernest Meyers was
on the witness stand as a witness, testifying in his own be-
half, Mr. Wood had him identify the release which he had
executed to this fund and, which had reached the hands of
the Meyers Company through Shaw & Co.  He also exhib-
ited to Ernest Meyers a copy off a letter written to him

by Shaw & Co. requesting the release, which Meyers identified, and stated that he had in his files the original of the letter. On redirect examination Mr. Miller, the attorney for Ernest Meyers, asked him three or four questions about the release, one of which was as to whether or not he had ever delivered the release to the Meyers Company, to which he replied that he had not.

Later Mr. Wood offered the release in evidence, to which Mr. Miller objected, on the ground that the release was not attached as an exhibit to the answer, but Mr. Wood replied that the answer pleaded payment, and that the release was evidence of it. Later Mr. Wood moved for an instructed verdict in favor of Meyers & Co. on four grounds: (1) That the contract was not made or ratified by the defendant; (2) because the Shaw & Co. claim was not legally discharged or abandoned; (3) in substance, because the complaint stated no cause of action that would support any judgment; (4) "upon the ground, further that the evidence shows that whatever obligation did exist, either to the Meyers Company or to Alex D. Shaw & Co. on the part of the plaintiff, or to the plaintiff, has been fully settled, satisfied, and discharged."

The court sustained the motion for an instructed verdict, and in sustaining the same failed to set forth the ground upon which its action was predicated. On the 3rd day of April, 1915, and within five days succeeding the trial, Mr. Miller, attorney for Ernest Meyers, filed a motion for a new trial in which he set forth three grounds: (1) Because the court erred in refusing to permit the plaintiff to show that it was the intention of the parties to the contract marked "Exhibit I" to bind the corporation to the performance of the eighth paragraph of said agreement instead of creating a personal liability; (2) "because the court erred in holding that the defendant had not ratified the contract marked 'Exhibit 1';" (3) "because the court erred in directing a verdict in favor of the defend-

State ex rel. Meyers Co. v. Raynolds, Judge, 22 N. M. 473.

ant and against the plaintiff." On the 22nd day of June, 1915, Mr. Miller filed a supplemental motion for a new trial upon the following grounds:

"Because, subsequent to the trial of this cause plaintiff has discovered evidence which will establish the fact that the contract Exhibit A attached to the amended complaint was ratified by the Meyers Company, Incorporated, the defendant herein; that said evidence is new, material to the issue, and not cumulative, nor will be brought to impeach any evidence or testimony of any witness who has been heretofore examined in this cause; that the existence of this evidence was not known to the plaintiff, nor could he have discovered and procured the same by the use of reasonable or utmost diligence at the former trial; that said evidence appears in the affidavit of the plaintiff hereto attached marked 'Exhibit A.' and made a part of this ground in support of the motion for new trial as fully as if incorporated herein."

Thereafter the court at the September term sustained the motion for a new trial and set aside the verdict. At the following March term, upon motion filed by Mr. Wood, the court set aside the order awarding a new trial, because not having decided the motion therefor or continued the same under the statute, the court had no power to grant the motion. Thereafter, and almost a year after the trial, Mr. Miller, attorney for Ernest Meyers, for the first time filed a motion in court' to set aside the verdict and award Ernest Meyers a new trial because of fraud and deceit practiced by Mr. Wood on the court in introducing the release from Ernest Meyers in evidence under the plea of payment. This motion was granted by the court on a finding that Mr. Wood had been guilty of intentionally and fraudulently deceiving the court by the introduction in evidence of this release.

I do not doubt the assertion of Judge Raynolds in his return that he was misled by this release, but I do not believe that Mr. Wood, by the introduction of the release in evidence, intended to deceive or mislead Judge Raynolds. I am satisfied that Mr. Miller attached no importance to this release at the time it was offered in evidence or at the time the motion was made for a directed verdict. Even

when Ernest Meyers was on the stand he contented himself by simply asking him as to whether or not he had ever delivered the release to Meyers & Co., to which he replied that he had not. Mr. Meyers was Mr. Miller's client, and presumably Mr. Miller was fully conversed with all the facts of the case; at least Mr. Wood probably so assumed. Mr. Miller says in an affidavit filed in the case that he had been taken by surprise by the introduction of the release in evidence. If this be conceded to be true, certainly he knew of the facts when 60 days later he filed his supplemental motion for a new trial in which he fails to mention the release. Evidently Mr. Miller did not believe that the court directed a verdict because of this release, as in neither his original motion nor in his supplemental motion for a new trial which he filed does he refer in any manto it, but bases his motion upon the assumption that the · court directed a verdict upon some one of the other grounds of the motion.

The complaint in the case did not state a cause of action and certainly justified the action of the court in directing a verdict on that ground alone. It failed to show the legal extinguishment or abandonment of the Shaw & Co. claim against Meyers & Co., which must have been made to appear before any right existed on the part of Ernest Meyers to recover the money in question. That the complaint was thus defective and that the release from Shaw & Co. did not accomplish, legally, the purpose for which it was evidently intended, was recognized by Mr. Miller, because, when the court set aside the verdict upon his motion a year after the trial, he immediately filed an amended complaint in which he sets forth a release subsequently procured from Shaw & Co. which was in proper form and accomplished the purpose evidently intended by the first release of satisfying and discharging all claim against Meyers & Co., thereby enabling Ernest Meyers to take down the money.

It cannot be said that Mr. Wood improperly offered the

JANUARY TERM, 1917.    489

State ex rel. Meyers Co. v. Raynolds, Judge, 22 N. M 473.

release in evidence under the plea of payment because actual cash had not passed between the parties; if the release amounted to a legal and valid discharge of all claim which Ernest Meyers had in and to the money in question. The general rule in this regard is illustrated by the following quotations:

"In an action to recover an alleged unliquidated indebtedness, the defendant, under a plea of payment, is entitled to give proof of any valid agreement between the parties which would operate to discharge the debt." McLaughlin v. Webster. 141 N. Y. 76, 35 N. E. 1081.

"In an action upon a promissory note, held by the plaintiffs as collateral security, where the defendant sets up in his answer the defense of payment, he may give in evidence any facts which in law amount to a satisfaction of said note, as against such plaintiffs." The Farmers' Bank v. Sherman, 33 N. Y. 69.

"Under the general issue, or a general plea of payment, payment in anything that has been accepted, or received as payment may be proved. And in these cases it is a question for the jury whether what may have been given and received was a payment or not, in the particular case. * * * A plea of payment is not one of those in which it is necessary to set out all the facts, particularly to show that what has been done amounts in law to a payment; but it is sufficient to allege the fact of payment, and it is then determined by the evidence given, whether the fact is made out or not." Louden v. Birt, 4 Ind. 566.

"The weight of modern authority does not confine the evidence under plea of payment to money payments alone; the general rule seeming to favor the reception of evidence of anything tendered by the obligator and received by the obligee in satisfaction and discharge of the debt." 16 Pl. & Pr. 207.

To the same effect are the cases of Walker vs. Crawford, 56 Ill. 444, 8 Am. Rep. 701, and Richabaugh vs. Dugan, 7 Pa. 394.

Whether or not the release was given without consideration or whether, under the circumstances, Meyers & Co. were entitled to avail themselves of the benefit of this release would present a question of law. It might be that the court could properly have held that the release was invalid, but certainly an attorney offering the release in evidence with the other party to the cause, represented by an

attorney, all of whom were cognizant of the facts which induced the execution of the release, and the party executing the release being then a witness on the stand, would not, under such circumstances, intentionally and knowingly undertake to deceive the court trying the case.

Meyers & Co. had not agreed to pay Shaw & Co. should the release from Ernest Meyers be procured and forwarded to them. They had agreed in such event to take up the claim for consideration, but had refused, without such release, to even consider the matter of payment, because of the liability under the contract which would be assumed by them by so doing. I grant that Shaw & Co. probably assumed from the language in the letter that payment would be made in case the release was procured and sent to them. In the money referred to in paragraph 8 of the contract, as I have stated, Shaw & Co. had no interest, and this sum was not to be used, strictly speaking, to pay Shaw & Co., but only for the purpose of reimbursing Meyers & Co. should they legally be called upon to pay the Shaw claim. This money was the property of Ernest Meyers, subject to the agreement under which it was retained by the Meyers Company, if the corporation was bound by the contract, with which he could do as he pleased, insofar as his own title thereto was concerned. Shaw & Co. evidently procured from him for the benefit of the Meyers Company a release of his claim and interest therein. This release was forwarded to Meyers & Co. without condition or limitation, but simply upon the strength of a letter from Meyers & Co. that if they had such release "this question of liability might be considered."

In explaining the motives which actuated him in this regard Mr. Wood in his affidavit stated:

"It was apparent to me then * * * that the whole negotiations were covered by the written correspondence and there was no promise or direct representation of the Meyers Company, outside of the correspondence, that the correspondence demonstrated what the parties had done, whatever might have been their intention to do. It was apparent to me from

State ex rel. Meyers Co. v. Raynolds, Judge, 22 N. M. 473.

this correspondence that confronted, with the alternative of giving up one claim or the other, Shaw & Co. and Meyers, then acting together, he decided to surrender Meyers' claim and rest on Shaw & Co.'s claim, and that the consideration for the delivery of the release to the Meyers Company was its promise, not as the affidavit states, to pay Shaw & Co., but, instead, to give consideration to the original honesty and justice of their claim, and the only hint of anything further was that contained in former letters to the effect that, if the justice of Shaw & Co.'s claim were established, they would be willing to pay it, notwithstanding the statute of limitations. This seemed to me to be a sufficient legal consideration for their action in giving the release. There was no thought or hint that any fraud was committed by Meyers Company on Shaw & Co. to get the release. I knew of none then nor did I suspect any. * * * As before stated, it was impossible to tell from the complaint the exact theory upon which the plaintiff was proceeding. It occurred to me as possible that he had no theory other than a confused idea that there were some rights there which a court could enforce. On the other hand, it was altogether possible that the complaint had been thus vaguely drawn purposely and with the object of taking advantage of any cause of action which might develop on the trial from the evidence and which the court might be asked by amendment to cover with the complaint. It therefore seemed necessary to fully protect by the proof the theory upon which I was conducting the defense. These theories were: First, that as this action was apparently proceeding on the contract that this was not the contract of Meyers Company, and was not enforceable against them; second, that at any rate Meyers had no claim against the Meyers Company until Shaw & Co.'s claim was legally dismissed, and, the allegations being merely that it was barred by the statutes of limitations, that was plainly not a dismissal within the meaning of the contract which would give Meyers a cause of action against the Meyers Company; third, that the evidence plaintly shows that Meyers and Shaw & Co., who were then acting together, had elected to give up and discharge the Meyers claim and rely upon the Shaw & Co. claim; fourth, that the complaint stated no cause of action, and therefore would not support any judgment. Upon this defense of action to rest on the Shaw & Co. claim and keep it alive the release was competent evidence, and, it seems to me, conclusive evidence, and was proven and offered in evidence for that purpose."

It may be that the court would not have admitted the release in evidence, or would have given no weight to it had the facts been fully disclosed, but, as I view the matter, looking at it from Mr. Wood's viewpoint, the duty did not rest upon him to attack the validity of the release which

he was offering in evidence. It had been signed by Ernest Meyers and placed in the hands of his client, for the purpose, as Mr. Wood stated he believed, to clear the way for action on the Shaw & Co. claim, should Meyers & Co. conclude it was a just claim. With astute counsel sitting across the table from him, and with the party who executed the release upon the stand, and presented with the release for identification of his signature, I cannot see upon what theory Mr. Wood was required to assume the burden of bringing before the court the facts which induced the execution and delivery of the release, if, as he states, he entertained the honest belief that the release was valid and binding.

We may assume, for the purpose of argument, that the release was invalid, and that the court, had it been conversant with all the facts, would have so held. But certainly it should not be held that Mr. Wood purposely and knowingly perpetrated a fraud upon the court, if reasonable minds might differ as to whether the release was valid and binding.

Suppose, for example, that a lawyer should institute suit upon a promissory note for a client, and the party sued has a valid defense to the note which will defeat a judgment if it is set up and established, and the lawyer knows the facts; he files the suit, and the defendant answers, defending upon some other ground; is the lawyer who files the suit guilty of fraud and deceit because he does not call the attention of the court and the party to the defense which will defeat the action?

I cannot give my assent to a rule which would subject attorneys to the risk of disbarment or of being adjudged guilty of deceit and fraud, because all the facts relative to a position assumed by an attorney or a proposition advanced by him are unknown to or are misunderstood by the court, either because the party advancing the proposition does not clearly explain the matter to the court, or be-

cause his adversary sits quietly by with full knowledge of all the facts and permits the court to labor under a misapprehension and possibly make a mistake. When Mr. Wood introduced this release in evidence it was the duty of Mr. Miller to have had his client fully explain to the court all the circumstances under which, and the purpose for which, the release was executed. When all these facts were laid before the court, then it would have been within the province of the court to have determined the legal effect of the release.

For these reasons, I cannot concur in the majority opinion.