410 P.2d 732

**STATE of New Mexico, ex rel. Gilbert Joe ANAYA, Petitioner,**

**v.**

**James M. SCARBOROUGH, District Judge, Respondent.**

**No. 7980.**

Supreme Court of New Mexico.

Jan. 17, 1966.

Bertrand B. Prince, Santa Fe, for petitioner.

Alfonso G. Sanchez, Sante Fe, for respondent.

MOISE, Justice.

Petitioner claims respondent Judge has an "interest" in the proceeding so as to disqualify him from sitting in this cause under the provisions of Art. VI, § 18, N.M. Const., which reads:

> "No judge of any court nor justice of the peace shall, except by consent of all parties, sit in the trial of any cause in which either of the parties shall be related to him by affinity or consanguinity within the degree of first cousin, or in which he was counsel, or in the trial of which he presided in any inferior court, or in which he has an interest."

In State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511, this court held that a judge is presumptively partial or biased if he is related to any party to the pro-

··ceeding, if he · has · served as counsel or presided as a judge· in ·the trial of the cause ·in a lower court, or if he has a pecuniary interest, but the court specifically did not ·decide if "interest" was limited to "pecuniary interest." This is the first problem which must be· met here since respondent is not related to any of the parties, has not .served as counsel, did not sit as judge in any trial in an inferior court, and does not have a pecuniary interest.

In Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407, Mr. Justice Bickley, in a special concurring opinion, stated his view that "interest" as used in Art. VI, § 18, supra, could arise from other than pecuniary considerations and that any judge who cannot preside over a case with impartiality has such an "interest." However, there is nothing to indicate that the other four members of the court agreed with this position, and there has been no direct holding on the question by this court.

We now declare, in accord with what appears to be the American rule, that an "interest" necessary to disqualify a judge must be a present pecuniary interest in the result, or actual bias or prejudice, and not some indirect, remote, speculative, theoretical or possible interest. See cases cited in note, 10 A.L.R.2d 1307, 1313, 1317.

Even though we hold respondent not disqualified as above set forth, there re-

mains for consideration, petitioner's argument that the writ heretofore issued should be made permanent under our superintending control over inferior courts, as provided in Art. VI, § 3, N.M.Const.·

In State ex rel. Transcontinental Bus Service, Inc. v. Carmody, 53 N.M. 367, 378, 208 P.2d 1073, 1080, the cases where it was sought to invoke this court's superintending control were reviewed and the following pronouncement made:

"It is not often we have been called· on to · consider the conditions under which we will exercise this power of superintending control. State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376; State ex rel. Meyers Co. v. Raynolds, 22 N.M. 473, 164 P. 830; · State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1; Albuquerque Gas & Electric Co. v. Curtis, 43 N.M. 234, · 89 P.2d 615. The matter has been considered often enough in the cases cited, however, for us to reach some definite conclusions as to when it is appropriate to exercise the power and the means of doing so. It can be taken as settled that this control may not be invoked to perform the office of an appeal. State v. Medler, supra. On the other hand, even though the trial court be moving within its jurisdiction and the threatened action be error only, as distinguished from a want of jurisdiction as well, this court

may intervene by an appropriate writ in an exercise of its power of superintending control, if the remedy by appeal seems wholly inadequate. State v. Raynolds, supra; or where otherwise necessary to prevent irreparable mischief, great, extraordinary, or exceptional hardship; costly delays and unusual burdens of expense. Albuquerque Gas & Electric Co. v. Curtis, supra."

For a thorough and instructive discussion of the basis for superintending control, and the rules to be applied when it is invoked, see State ex rel. Lemke v. District Court, 49 N.D. 27, 186 N.W. 381.

 We have been most reluctant to invoke our power of superintending control as a basis for interfering with a court in the exercise of its jurisdiction as witness the fact that since adoption of our constitution we have done so only five times, in the following cases: State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376; State ex rel. Transcontinental Bus Service v. Carmody, supra; State ex rel. De Moss v. District Court of the Sixth Judicial District, 55 N.M. 135, 227 P.2d 937; Montoya v. McManus, 68 N.M. 381, 362 P.2d 771, and most recently in Flores v. Federici, 70 N.M. 358, 374 P.2d 119, where a writ of mandamus was made permanent under superintending control, although not specifically so stated. However, we recognize the power as one separate and distinct from other power and jurisdiction granted this court in the constitution. One of the reasons for placing the power in the Supreme Court must have been to make the Supreme Court responsible to see that inferior courts do not depart from proper judicial activity, become dictatorial or oppressive in their conduct, or otherwise behave improperly so as to interfere with or reflect upon the court system, or shake public confidence in the administration of justice and the judiciary. See note, 112 A.L.R. 1351, and cases cited therein; see also, In re Assignment of Huff, 352 Mich. 402, 91 N.W.2d 613; Ransford v. Graham, 374 Mich. 104, 131 N.W.2d 201. We have determined that the right will be exercised sparingly, and only where the remedy by appeal is wholly inadequate, or where it is necessary to prevent irreparable mischief, great, extraordinary or exceptional hardship, costly delays and unusual burdens of expense. Montoya v. McManus, supra.

Petitioner asserts that respondent is biased and prejudiced against him. He bases his contention in this regard upon the following facts: (1) that respondent actively participated in efforts to get petitioner to plead guilty to second degree murder or voluntary manslaughter if the prosecutor would accept such a plea, and in so doing, stated that in his opinion the state could probably establish a prima facie case of first degree murder; (2) that respondent held a pre-trial conference al-

though none is provided for by our rules, at which conference respondent obtained from petitioner's court appointed counsel certain admissions and concessions which were not required to be made, and (3) that respondent held a hearing wherein he denied petitioner the attorney of his choice, and at which petitioner was required to answer questions under threat of being held in contempt. In fact, petitioner was held in contempt of court and a sentence of 30 days in jail was imposed.

As regards item (2), it should be noted that respondent assured petitioner's employed counsel that any concessions or agreements made at the so-called pre-trial conference could be withdrawn and that petitioner would in no way be held to any of them or be prejudiced thereby. There is no provision in our statutes or rules wherein a pre-trial conference in criminal proceedings is permitted or contemplated. Indeed, it is difficult to imagine how the constitutional guaranties to one charged with a crime can be made effective in any kind of proceeding wherein admissions, concessions or agreements of any kind are made by an accused before proof is presented to establish a prima facie case. It was accordingly error for the court to hold a pre-trial conference. However, under the circumstances, it is doubtful whether this alone is ground for relief.

The disposition of items (1) and (3) noted above, presents more difficult and vexatious problems. In State ex rel. Hannah v. Armijo, supra, we find the following:

"\* \* \* [I]nterest of the judge in the result of the case has always been a ground for change of venue in New Mexico, and 'interest' of the judge is a constitutional disqualification. The nature of such 'interest' has never been defined by our court. By the common law, the slightest pecuniary interest would disqualify a judge, and with logical consistency the English courts hold that a judge is rendered incompetent upon a showing of a real possibility of bias. Accordingly, it has been held that personal animosity between judge and party is sufficient for recusation. King v. Justices of Queen's County, [1908] 2 Ir. R. 285; King v. Justices of County Cork [1910] 2 Ir. R. 271; King v. Rand, [1913] 15 D.L.R. 69. There has been a wholesome recognition that human frailty may not be overcome by trained habits of impartiality, that human limitations of the presiding judge may result in the deprivation of a just hearing, and that the stimulation of public confidence in the integrity of the judiciary demands that the judge be not only actually fair minded, but above all suspicion to the contrary."

In that case we also had the following to say:

"Would any one suppose for a moment that a deprivation of life, liberty, or propery by a court presided over by a judge who is partial to one party and hostile to the other is with due process of law?"

■ Concerning the complaint that respondent stated an opinion that the state could probably establish a prima facie showing of first degree murder, we conclude that the respondent judge was not disqualified because of such expressed opinion. The respondent's opinion arose out of reading the transcript of the preliminary hearing in connection with a motion by petitioner that he be admitted to bail. Respondent did not state if, in his opinion, petitioner was guilty. Any judge would indeed be an unusual person if he formed no opinion, and certainly he had to make a decision since the question of bail turned on a determination of whether "the proof is [was] evident or the presumption great" of the commission of a capital offense. Art. II, § 13, N.M.Const. See, Slayton v. Commonwealth, 185 Va. 371, 38 S.E.2d 485; note, 45 L.R.A. (N.S.) 511. If this were not the correct rule, a district judge who sat as a committing magistrate and bound an accused over for trial in the district court could be accused of bias resulting therefrom and be prevented from presiding at the trial. Similarly, one who presided at a trial resulting in a conviction, after reversal in the Supreme Court, would be

disqualified from sitting when the case was retried. That such is not the law was held in State v. Nelson, 65 N.M. 403, 338 P.2d 301.

■ Although we subscribe to the rule stated above, our problem is compounded by the fact that respondent participated in some manner in connection with efforts directed at having petitioner plead to a lesser degree of homicide than first degree murder, and in attempts to obtain the district attorney's agreement to accept such a plea. Any such conduct on the part of the court is, to our minds, entirely incompatible with the proper position of the judge as an impartial presiding officer. A case very similar to this on its facts is Heflin v. State, 88 Ga. 151, 14 S.E. 112, where the judge, outside of court and entirely unofficially, urged defense counsel to plead his client guilty. Under the cir-cumstances, the Georgia court concluded that there was no impropriety established, or bias shown. At the same time, the court recognized that any official action by a judge to this end would be "unbecoming the judicial station." Compare Young v. United States (1965) 120 U.S.App.D.C. 312, 346 F.2d 793. The court in the instant case did not express any hostility or bias, such as was present in Rugenstein v. Ottenheim-er, 78 Or. 371, 152 P. 215, and in Massie v. Commonwealth, 93 Ky. 588, 20 S.W. 704, relied on by petitioner. In both of these cases proof was present that the court

favored one side over the other. Of course, a person charged with a crime should not be required to proceed to trial before a presiding judge who has openly expressed animosity or hostility. Neither do we think he should be required to face trial before a judge who has participated in any manner in efforts to get him to plead guilty.

We next consider the effect of the hearing held by the trial court at which petitioner was adjudged in contempt for refusing to answer questions propounded by the judge. In this connection, we would make two observations. First, the entire proceeding was improper and to no purpose and, second, defense counsel, by his conduct, certainly can be said to have tried the patience of the trial judge. Although this may explain why the judge did some things he probably would not have done if he had calmly considered the impressions which petitioner could reasonably be expected to get from the proceedings, it in no sense excuses his action, nor does it alter the results which flow therefrom.

As already noted, the hearing wherein petitioner was held in contempt was without foundation or basis in law. There was nothing that could be accomplished therein. That respondent insisted on holding the session, and then proceeded as he did, when considered with what had gone before, leads us to a very definite conclusion that, in the instant case, to require petitioner to go to trial before respondent would be grossly improper.

At this point we would observe that we hold as we do even though we fully appreciate that petitioner attempted a statutory disqualification of respondent under § 21–5–8, N.M.S.A.1953, which was denied because not timely, and that, as stated above, respondent was not disqualified under Art. VI, § 18, N.M.Const. In so doing, we expressly disavow any purpose or intention to in any way alter, change or modify any decisions of this court interpreting § 21–5–8, supra, or Art. VI, § 18, N.M. Const.

Neither are we approving a means of disqualification on the basis of mere suspicion of bias or prejudice. Suspicion is not sufficient, but under the facts reviewed above, we are convinced that petitioner's stated doubts that respondent could preside fairly and impartially in the criminal trial far transcends anything that might be described as based on imagination or apprehension of something wrong or hurtful without proof, or on slight evidence. Under the circumstances here present, we consider it imperative that some method be available to protect the petitioner from having to stand trial before the respondent. It is no answer to say that, after trial and conviction, the question of the judge's prejudice so as to deprive petitioner of a fair trial may be asserted on appeal. The

following language from Berger v. United States, 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481, 486, is apt:

"* * * To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. The remedy by appeal is inadequate. It comes after the trial and if prejudice exist it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient."

Also, in arriving at our conclusion that the alternative writ heretofore issued should be made permanent, we have not overlooked the oft-repeated rule that prohibition is not to be utilized as a means of obtaining piece-meal review, or as a substitute for appeal. In State ex rel. Transcontinental Bus Service, Inc. v. Carmody, supra, we recognized the propriety of proceeding under our powers of superintending control where the remedy by appeal was grossly inadequate or where required to prevent irreparable mischief, exceptional hardship, costly delays and undue burdens of expense. That the instant case falls within this classification cannot be doubted. Petitioner stands accused of first degree murder. He is in jail without bond. A require-

ment that he stand trial under the circumstances related above and then, if convicted, attempt to gain reversal for the matters already past and here complained of, does not conform to our ideas of an adequate remedy. Compare, Abbott v. Christopher, 253 Iowa 311, 112 N.W.2d 310.

What we here hold is in complete accord with our decision in State ex rel. De Moss v. District Court of the Sixth Judicial District, supra. See also, Conkling v. De Lany, 167 Neb. 4, 91 N.W.2d 250; State ex rel. Jones v. Gay, 65 Wash. 629, 119 P. 830.

We perceive our duty under our power of superintending control is to make certain, insofar as humanly possible, that the traditional respect and high regard in which courts generally are held will in no way be encroached upon. In order to do so we are most assuredly of the opinion that courts must not only be impartial, unbiased and fair but, in addition, that no suspicions to the contrary be permitted to creep in. See quote above from State ex rel. Hannah v. Armijo, supra. See also, Justice Frankfurter's reasons for recusing himself in Public Utilities Commission v. Pollak, 343 U.S. 451, 466, 72 S.Ct. 813, 822, 96 L.Ed. 1068, 1079, from which we quote the following pertinent language:

"The judicial process demands that a judge move within the framework of relevant legal rules and the covenanted modes of thought for ascertaining

them. He must think dispassionately and submerge private feeling on every aspect of a case. There is a good deal of shallow talk that the judicial robe does not change the man within it. It does. The fact is that on the whole judges do lay aside private views in discharging their judicial functions. This is achieved through training, professional habits, self-discipline and that fortunate alchemy by which men are loyal to the obligation with which they are entrusted. But it is also true that reason cannot control the subconscious influence of feelings of which it is unaware. When there is ground for believing that such unconscious feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves. They do not sit in judgment. They do this for a variety of reasons. The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact."

District Judge Youngdahl's statement on disqualifying himself in United States v. Quattrone (U.S.D.C.1957) 149 F.Supp. 240, is likewise interesting and instructive.

The following summary of the functions of a judge from Cardozo, The Nature of the Judicial Process, is exceedingly well stated and in point:

"The judge * * * is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' "

Although there appears to be no direct proof of bias or prejudice in respondent, and indeed we doubt that he had any, we are nevertheless impressed that, because of respondent's conduct, reviewed above, petitioner has reasonable basis for suspicion and, accordingly, should not be required to proceed to trial before respondent. In this connection the following, quoted from People ex rel. Burke v. District Court of Third Judicial District, 60 Colo. 1, 152 P. 149, 155, is deemed pertinent:

"* * * [I]f the alleged facts stated in the application for a change of judge be true, he may imperceptibly to himself, however honest and pure his intentions, be unable to give a fair and impartial trial to these defendants. Prejudice is a mental condition or status, not susceptible of direct and positive proof. As a rule it is the result of no dishonest motives, and he whose acts

are affected by prejudice is usually unconscious of its influence. The greatest delicacy should constantly be observed on the part of judges, to the end that they never act where there could be substantial doubt whether they would be free from bias. The courts must observe such proprieties, not only because they are right, 'but in order to retain public respect and secure willing and ready obedience to their judgments.' Nordloh v. Packard, 45 Colo. 515, 101 Pac. 787. 'Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed, not only the financial interests, but the honor, the liberty, and the lives of its citizens, and it should see to it that the scales in which the rights of the citizens are weighed should be nicely balanced, for, as was well said by Judge Bronson in People v. Suffolk Com. Pleas, 18 Wend. [N.Y.] 550: "Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." ' State ex rel. Barnard v. Board of Education [19 Wash. 8, 52 P. 317, 40 L.R.A. 317], supra. * * *"

Numerous cases in which the right of a superior court to prohibit an allegedly biased or prejudiced judge of an inferior court from presiding in a case are set forth in a note in 92 A.L.R.2d 306. Starting at page 338 are found criminal cases which have held the remedy proper. A few cases so holding are Conkling v. DeLany, supra; State ex rel. Jones v. Gay, supra; State v. Ketterer, 244 Minn. 127, 69 N.W.2d 115; Blackman v. MacCoy, 169 Cal.App.2d 873, 338 P.2d 234, 339 P.2d 169. Connelly v. United States Dist. Court (C.A.9, 1951) 191 F.2d 692, is a case where a defendant in a criminal case sought a writ of prohibition to prevent a trial judge from passing on a motion filed by the petitioner after the statutory affidavit of bias had been filed. It is particularly enlightening. See also, Berger v. United States, supra, and the following civil cases in which federal courts under their inherent power of appellate jurisdiction and "inescapable duty" have acted to deny a judge the right to try a case "to effectuate what seems to us [them] to be the manifest ends of justice." Texaco, Inc. v. Chandler (C.A.10), 354 F.2d 655, order filed December 27, 1965; United States v. Ritter (C.A.10, 1960) 273 F.2d 30; Occidental Petroleum Corporation v. Chandler (C.A.10, 1962) 303 F.2d 55; Rapp v. Van Dusen (C.A.3, 1965) 350 F.2d 806. La Buy v. Howes Leather Company, 352 U.S. 249, 77 S.Ct. 309, 1 L.E.2d 290, is also instructive.

 Only by acting resolutely in matters such as this can we hope to maintain

the integrity of our court system and the respect in which it is held. This was recognized in Petition of Board of Commissioners of State Bar, 65 N.M. 332, 337 P.2d 400. See also, State v. Nelson, supra. Because of the irreparable mischief, great, extraordinary or exceptional hardships and costly delays that will ensue if we do not exercise our power of superintending control herein, we conclude this is a proper case in which to do so. See note, 112 A.L.R. 1351.

For the reasons stated, the writ heretofore issued is made permanent.

It is so ordered.

CARMODY, C. J., and CHAVEZ, J., concur.

NOBLE and COMPTON, JJ., dissenting.

NOBLE and COMPTON, Justices (dissenting).

The majority hold that an attempted statutory disqualification was not timely filed and expressly determined that none of the acts complained of constituted actual bias or prejudice within the meaning of Art. VI, § 18 of the New Mexico Constitution, and that, accordingly, the district judge was neither disqualified from presiding at relator's trial, nor did such acts constitute error which would require a reversal.

This court has heretofore consistently refused to exercise the power of superintending control over district courts except (1) where there was a clear want of jurisdiction to proceed so that any judgment rendered by it would be a complete nullity and subject to collateral attack, or (2) to prevent an erroneous act, as distinguished from a want of jurisdiction, if the remedy by appeal seems wholly inadequate as where its exercise is necessary to prevent irreparable hardship, costly delays, and unusual burdens of expense. State ex rel. Transcontinental Bus Service, Inc. v. Carmody, 53 N.M. 367, 208 P.2d 1073; Albuquerque Gas & Electric Co. v. Curtis, 43 N.M. 234, 89 P.2d 615.

The majority have now, however, extended the superintending control of this court far beyond anything heretofore considered, and now invoke it to prohibit a trial judge from presiding in a criminal trial only because of the suspicion of the defendant that such trial judge may somehow act unfairly or impartially in the succeeding trial.

It is obvious to us that the basis upon which a litigant may exercise the statutory right of disqualification under § 21–5–8, N.M.S.A.1953, is the mere suspicion of bias or prejudice of the presiding judge. This is necessarily so because, while the statute fixes no time limit, except as provided by § 21–5–9, N.M.S.A.1953, this court by construction of that statute has said that such an affidavit filed after the judge has acted judicially upon any material issue is not timely filed. State ex rel. Weltmer v. Taylor, 42 N.M. 405, 79 P.2d 937; State ex rel.

Lebeck v. Chavez, 45 N.M. 161, 113 P.2d 179; State v. Hester, 70 N.M. 301, 373 P.2d 541. By requiring the disqualification to come before any judicial act and holding that it comes too late if filed after an act which would form the basis for a belief of prejudice, the result is that such statutory disqualification can only be based upon suspicion of bias or prejudice.

It seems wholly inconsistent to continue holding that the statutory disqualification upon suspicion of bias or prejudice must come before any act of the judge and now say that if such subsequent acts give reasonable ground for suspicion, we will do by superintending control that which we have said could not be done under the statutory right. If it is thought that a suspicion of prejudice supported by some judicial act of the judge should permit his disqualification, we suggest that a proper method would be to overrule our decisions construing the disqualification statute and permit such statutory disqualification at any time prior to trial, except as limited by § 21–5–9, supra, even though the basis of the litigant's belief of prejudice is some preliminary act of the judge.

The reasons given by Justice Frankfurter in Public Utilities Commission v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068, and by Judge Youngdahl in United States v. Quattrone, 149 F.Supp. 240 (D.C.1957), were reasons which to them appeared sufficient to warrant their voluntary recusal in their respective cases. There is, however, a vast difference between a reason for which a judge may recuse himself and one by which he may be prohibited from presiding on a case. In our view, State ex rel. De Moss v. District Court of the Sixth Judicial District, 55 N.M. 135, 227 P.2d 937, does not support the majority position. There, following State ex rel. Transcontinental Bus Service, Inc. v. Carmody, supra, superintending control was exercised to prohibit trial of an act because a trial would be expensive, damaging to the reputation of the physician regardless of the verdict, and because the act was barred by the Statute of Limitations, thus requiring reversal of any judgment for the plaintiff.

The majority having expressly determined that none of the acts of the district judge are sufficient, either in themselves or taken together, to constitute actual bias or prejudice for which he may be disqualified, and even though error would not require a reversal, convinces us that exercise of superintending control over judges of the district court should not be extended to include cases, such as this, where the ground rests upon the mere suspicion of a litigant. We, therefore, must dissent from the result reached by the majority.