28 P.(2d) 511

STATE ex rel. HANNAH et al. v. ARMIJO.
Judge of Fourth Judicial District.
No. 3930.

Supreme Court of New Mexico.
Oct. 14, 1933.

See, also, 37 N. M. 423, 24 P.(2d) 274.

James L. Briscoe, of Tucumcari, Irwin S. Moise, of Santa Rosa, and A. T. Hannett, of Albuquerque, for relators.

A. T. Rogers, Jr., and M. E. Noble, both of Las Vegas, and F. Faircloth, of Santa Rosa, for respondent.

Jesse G. Northcutt, of Trinidad, Colo., and Reed Holloman and Gilbert & Hamilton, all of Santa Fé, amici curiæ.

BICKLEY, Justice.

The relators are members of the school board of the Santa Rosa municipal school district. An action was commenced in the district court for the removal of relators from office. The relators filed in said action an affidavit of disqualification of the district judge as provided for in chapter 184 of Session Laws 1933. The district judge ignored the affidavit, and was about to proceed with the case when application was made here for our writ of prohibition, and an alternative writ was issued. The sole question before us for decision is the constitutionality of the statute.

In general, the same principles apply in cases where a judge may be disqualified from presiding over the trial of a particular case, as apply in cases where a change of venue is accorded under the statute, or the Constitution, on account of the disqualification of the presiding judge.

Ever since 1851, in New Mexico, the interest of the judge has been a ground for chang-

ing the venue in all cases both civil and criminal, as shown by section 17, chapter 27, art. 12, R. S. of N. M. 1865, chapter 9, Laws 1882, section 5571, Code 1915, Act of 1889, c. 77, § 1, section 5573, Code 1915. See, also, chapter 60, Laws 1929.

It will be noticed that section 5571, Code 1915, did not provide any method for presenting to the court any of the causes a party to the action might believe existed for a change of venue. And it is further to be observed that, while the acts of 1889 and 1929 make certain requirements as to a showing by motion and supporting affidavits, when the ground for change of venue is stated to be because such party cannot obtain a fair trial in the county wherein the cause is then pending, either because the adverse party has an undue influence over the minds of the inhabitants of such county or the inhabitants of such county are prejudiced against such party, or because by reason of public excitement or local prejudice in such county an impartial jury cannot be obtained in such county to try the same, such requirements do not extend to the presentation of the ground for change of venue of interest of the judge in the result of the case. Under sections 5571 and 5573, considerations of punctuation and context plainly so indicate, and this is emphasized by chapter 60, Laws 1929, particularly by the italicized portion thereof dealing with the cause for change when the judge is interested in the result of the case. The reason for this distinction seems clear. Under section 5573, Code 1915, it was within the power of the trial judge to decide as to the interest and the knowledge of the compurgators who asserted grounds for change of venue, exclusive of the interest of the judge. See State v. Buck, 33 N. M. 334, 266 P. 917. But the Legislature did not require the allegation and proof of facts to establish the interest of the judge or any determination by the judge of his own interest in the result of the case.

Likewise chapter 60, Laws 1929, does not require any evidence in support of the motion for change of venue when based upon the interest of the judge, and dispenses with any findings by the judge upon that question.

In the case at bar, the statute in question is as follows:

"Section 1. Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the Judge before whom the action or proceeding is to be tried or heard cannot, according to the belief of the party to said cause making such affidavit, preside over the same with impartiality, such Judge shall proceed no further therein, but another Judge shall be designated for the trial of such cause either by agreement of counsel representing the respective parties or upon the failure of such counsel to agree, then such facts shall be certified to the Chief Justice of the Supreme Court of the State of New Mexico, and said Chief Justice of the Supreme Court of the State of New Mexico, shall thereupon designate the Judge of some other District to try such cause.

"Sec. 2. Such affidavit shall be filed not less than ten (10) days before the beginning of the term of Court, if said case is at issue." Chapter 184, Laws 1933.

It is conceded that the language of this statute is absolute and mandatory. No discretion is vested in the judge against whom the affidavit is filed as to his disqualification. When an affidavit is timely made and in substantial compliance with the statute, the disqualification of the judge is accomplished so far as proceeding further in that particular case is concerned. There is no issue of law or fact to be determined by the judge sought to be disqualified.

Respondent claims that the statute offends article 3 of our Constitution, which provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted."

Did the Legislature go beyond its constitutional power in enacting this statute and thereby invade the province of a co-ordinate branch of the government? The Supreme Court of Oregon, in U'Ren v. Bagley, 118 Or. 77, 245 P. 1074, 1076, 46 A. L. R. 1173, in 1926, satisfactorily answered this question in the negative in a well considered and supported opinion, and we hold in accordance with the principles and decisions there announced.

It is no invasion of judicial power for the Legislature to say that such power shall not be exercised by judges who are believed by litigants to be partial. There can be no vestiture of judicial power in judges who are partial. Broom's Legal Maxims, page 85, credits Hobart, C. J., with the statement that even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void in itself, because the laws of nature are unchangeable. It is going but a step further for the Legislature as a matter of policy to dispense with proof of the fact of partiality where the litigant asserts its existence. Our Legislature in effect has said that a judge, even though blessed with all of the virtues any judge ever possessed, shall not be permitted to exercise judicial power to determine the fact of his own disqualifications, not because the judge in doing so would attempt to act otherwise than conscientiously, but because in their legislative judgment it is not fitting for him to make such attempt, and it is better that the courts shall maintain the confidence of the people than that the rights of judge and litigant in a particular case be served.

Respondent claims that too much power is placed by the statute in litigants. In this connection, it would be well to remember that the canons of judicial ethics adopted by the American Bar Association, "as a proper guide and reminder for judges, and as indicating what the people have a right to expect of them," * * * declare: "Courts exist to promote justice and thus serve the public interest * * * he (the judge) should avoid unconsciously falling into the attitude of mind that litigants are made for the courts instead of courts for the litigants * * * a judge's official conduct should be free from impropriety and the appearance of impropriety."

Similar ideas are expressed in the opinion in U'Ren v. Bagley, supra, which we have approved.

Incidently, the Oregon court answered in the negative the suggestion made here, that a judge has a vested right to sit in a particular case and a litigant a vested right to have his case heard by a particular judge. We hold that the statute does not deny due process of law and does not violate section 18 of article 2 of the Constitution.

It is urged that the statute is deficient because it does not require a statement of facts upon which the party affiant bases his belief that the judge cannot preside over his case with impartiality. Some statutes contain such provisions. This, however, was a question of legislative policy, and there exists difference of opinion as to which is the better policy. The Oregon court in U'Ren v. Bagley, supra, pertinently inquires: "What if the statute required the affiant specifically to allege the facts constituting the prejudice of the judge? Who would pass on such facts? Would the judge pass on his own qualifications? It would, indeed, be a strange judicial proceeding for a judge to determine his own state of mind and whether he was prejudiced or not. It is fundamental that no man should act as judge in his own case."

Such requirements of allegations of specific facts as to the interest of the judge are of doubtful efficacy. The following criticism written by Mr. Renzo D. Bowers, a member of the New Mexico Bar, and appearing at section 123 of his work on "Judicial Discretion of Trial Courts," so demonstrates:

"As the object of all laws and rules of procedure is to further the interests of justice, it is not logical that those interests could be adequately promoted by allowing a trial judge the privilege or discretion to pass upon his own qualifications to try a particular cause when his competency therefor is brought in question. In surveying the field wherein disqualification could arise, and wherein statutory provision has been made as it has in most of the states, it is seen that all of the possible grounds, except one, are subject to positive ascertainment, and the ruling of the court upon those grounds should be accorded the same status in the procedural system as its exercise of any other nondiscretionary function, and should be subject to the same power of review by an appellate court. The one exception noted is where the alleged ground of disqualification is the bias or prejudice of the presiding judge. In some of the precedents that concede a discretion to the trial judge in cases where this charge is made against him, the rule, if any declaration of reasons at all is offered in support of it, is generally placed upon the ground that the presiding judge is better able than another to know his own mind, and to know whether there is within it such bias for one or prejudice against another party as to prevent a fair and impartial trial. The active practitioner knows how chimerical such a reason is. The statement is partly, but not wholly true. So illusive and so complex are the workings of the human mind, and so insidiously do impressions slip upon and sink into it, that even the most upright and conscientious judge may have feelings toward a party the character

of which he does not recognize himself. The conscientious judge, if he can discern within his own mind such feelings, either for or against a party, that might result in an unfair trial, will promptly and sua sponte disqualify himself and retire from the case. But how many such instances have ever been heard of? Judges seldom recognize such feelings. More seldom do they admit their existence. An admission of the kind would be considered a weakness, a reproach to judicial temperament, that few have the courage to confront. And where a judge does not disqualify himself in a case where he should, but waits for the charge solemnly to be made against him by the affidavit of a party, the mere filing of the charge, as is well known in trial court circles, often intensifies the feeling of the judge against the party, or perhaps even originates it where it did not in fact exist before. The charge is not complimentary. It is derogatory, generally, and reflects on the strength of character of the trial judge. In whatever other words it may be clothed, it amounts to a charge against the judge of intended wrongdoing. How many judges, possessing as they do the frailties of the average human mind, are competent to ignore such charges alone, even though there be question as to the previous existence of bias or prejudice? The statutes that give this ground for disqualification were intended to serve a definite purpose. And that purpose is no more than half served if discretion in the matter be conceded to the trial judge against whom the charge is made."

The following observation of our highest court repels several of respondent's arguments: In Berger v. U. S., 255 U. S. 22, 41 S. Ct. 230, 233, 65 L. Ed. 481, upholding a similar statute, that court said:

"The belief of a party the section makes of concern and if opinion be nearer to or farther from persuasion than belief, both are of influence and universally regarded as of influence in the affairs of men and determinative of their conduct, and it is not strange that section 21 should so regard them. * * *

"We are of opinion, therefore, that an affidavit upon information and belief satisfies the section and that upon its filing, if it show the objectionable inclination or disposition of the judge, which we have said is an essential condition, it is his duty to 'proceed no further' in the case. And in this there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside, and any serious delay of trial is avoided by the requirement that the affidavit must be filed not less than ten days before the commencement of the term.

"Our interpretation of Section 21 has therefore no deterring consequences, and we cannot relieve from its imperative conditions upon a dread or prophecy that they may be abusively used. They can only be so used by making a false affidavit, and the charge of and the penalties of perjury restrain from that—perjury in him who makes the affidavit; connivance therein of counsel, thereby subjecting him to disbarment. And upon what inducement and for what achievement

—no other than trying the case by one judge rather than another, neither party or counsel having voice or influence in the designation of that other; and the section in its care permits but 'one such affidavit.'

"But if we concede, out of deference to judgments that we respect, a foundation for the dread, a possibility to the prophecy, we must conclude Congress was aware of them and considered that there were countervailing benefits.

"At any rate we can only deal with it as it is expressed and enforce it according to its expressions. Nor is it our function to approve or disapprove it, but, we may say, that its solicitude is that the tribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial, free, to use the words of the section from any 'bias or prejudice' that might disturb the normal course of impartial judgment. And to accomplish this end the section withdraws from the presiding judge a decision upon the truth of the matters alleged. Its explicit declaration is that upon the making and filing of the affidavit, the judge against whom it is directed 'shall proceed no further therein, but another judge shall be designated in the manner prescribed in * * * section twenty-three to hear such matter.' And the reason is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. The remedy by appeal is inadequate. It comes after the trial, and if prejudice exist, it has worked its evil and a judgment of it in a reviewing tribunal is

precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient."

Under our statute it is the challenge of, and not the fact of, prejudice that ipso facto disqualifies the judge from acting in a particular case. Chief Justice Ryan, in Bachmann v. City of Milwaukee, 47 Wis. 435, 2 N. W. 543, speaking of a statute similar to ours, said: "The venue is to be changed, not upon the fact of the judge's prejudice, but upon the imputation of it. Van Slyke v. Ins. Co., 39 Wis. 390 [20 Am. Rep. 50]. And the statute, as it now stands, appeals to the conscience of the party for a reasonable apprehension, not for the truth of the fact on which the apprehension rests. It goes upon a statement of belief, not of fact, save in so far as belief may be a fact; upon assertion that the party has reason to believe and does believe that he cannot receive a fair trial on account of the judge's prejudice, not upon averment of the prejudice itself."

Respondent quotes section 18 of article 6 of the Constitution as follows: "No judge of any court nor justice of the peace shall, except by consent of all parties, sit in the trial of any cause in which either of the parties shall be related to him by affinity or consanguinity within the degree of first cousin, or in which he was counsel, or in the trial of which he presided in any inferior court, or in which he has an interest."

The contention is that this language provides the only grounds of disqualification of

judges, and that the express mention of these grounds implies the exclusion of all others.

██ It is to be presumed that the Legislature, in enacting the statute, has performed its duty of keeping within constitutional bounds. State v. Hall, 23 N. M. 422, 168 P. 715; State v. Sargent, 24 N. M. 333, 171 P. 790; Abeytia v. Gibbons Garage of Magdalena, 26 N. M. 622, 195 P. 515; Asplund v. Alarid, 29 N. M. 129, 219 P. 786. In doubtful cases the statute is held constitutional, and it is only when it is clearly violative of the Constitution that it is so held by the courts. State v. Safford, 28 N. M. 531, 214 P. 759.

We deem it unnecessary to review at length the precedents which support the statute, being satisfied with the assertion in U'Ren v. Bagley, supra, that similar statutes have been generally upheld by the appellate courts and where the decisions are collected.

As we have seen, interest of the judge in the result of the case has always been a ground for change of venue in New Mexico, and "interest" of the judge is a constitutional disqualification. The nature of such "interest" has never been defined by our court. By the common law, the slightest pecuniary interest would disqualify a judge, and with logical consistency the English courts hold that a judge is rendered incompetent upon a showing of a real possibility of bias. Accordingly, it has been held that personal animosity between judge and party is sufficient for recusation. King v. Justices of Queen's County, [1908] 2 Ir. R. 285; King v. Justices of County Cork, [1910] 2 Ir. R. 271; King v.

Rand, [1913] 15 D. L. R. 69. There has been a wholesome recognition that human frailty may not be overcome by trained habits of impartiality, that human limitations of the presiding judge may result in the deprivation of a just hearing, and that the stimulation of public confidence in the integrity of the judiciary demands that the judge be not only actually fair minded, but above all suspicion to the contrary.

In the United States, according to editorial comment in Harvard Law Review, vol. 41, p. 78, some courts have drawn an irrational distinction. While pecuniary interest is commonly held sufficient ground for disqualification, prejudice is not. Under such holdings, a situation is created in which certain facts will disqualify merely because they raise a presumption of bias, while an actual showing of bias will not. Upon what theory could the Constitution makers have provided that a judge is disqualified to sit in the trial of any cause in which either of the parties shall be related to him or in which he was counsel or in which he has an interest except upon the theory that these circumstances would raise a presumption of partiality or bias?

The Alabama court does not follow the distinction made by some American courts, and holds that a judge should not act if he is subject to such a bias as an impartial trial could not be had under the circumstances. Ex parte Cornwell, 144 Ala. 497, 39 So. 354; Bryce v. Burke, 172 Ala. 219, 55 So. 635.

██ When inquiring as to constitutional limitations upon the legislative power, we should not be content to look at one clause

only of the Constitution, but should discover its spirit from a contemplation of its historic background and an examination of all its provisions. In Moses v. Julian, 45 N. H. 52, 84 Am. Dec. 114, the court said: "The 35th article of the Bill of Rights of New Hampshire declares that 'it is essential to the rights of every individual, his life, liberty, property and character, that there should be an impartial interpretation of the laws and administration of justice.' And 'it is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit.' This is but the expression of a well known rule of universal justice everywhere recognized, which the people of this State were anxious to secure as far as possible from all doubts, or possibility of legislative interference. It is one of the great principles of the common law, for which the people of England had struggled for ages, and which they ultimately succeeded in establishing against the strenuous efforts of a tyrannical government. We can have no higher authority than this for denouncing as illegal everything which interferes with the entire impartiality of every legal tribunal."

Section 18 of article 2 provides that "no person shall be deprived of life, liberty or property without due process of law."

Would any one suppose for a moment that a deprivation of life, liberty, or property by a court presided over by a judge who is partial to one party and hostile to the other is with due process of law?

Section 14 of article 2 of our Constitution provides that: "In all criminal prosecutions, the accused shall have the right to  *  *  * a speedy public trial by an impartial jury. *  *  * "

It seems very unlikely that our Constitution makers displayed this solicitude for an impartial trial, and at the same time intended to curtail the power of the Legislature to provide means in furtherance of such end, by disqualification of judges believed by the litigant to be partial. What would it avail the accused in a criminal prosecution to have a trial by an impartial jury if the proceedings are to be presided over by a biased and partial judge?

It is common knowledge that a biased judge may prejudice a party's cause without this appearing on the record. Massie v. Commonwealth, 93 Ky. 588, 20 S. W. 704.

In article 20, § 1, it is provided that every person elected or appointed to any office (including judges) shall take and subscribe an oath that he will faithfully and impartially discharge the duties of his office.

Can it be supposed that the spirit of our Constitution leaves the Legislature, which is declared to have "all powers necessary to the legislature of a free people," powerless to maintain impartial legal tribunals?

The Oregon Supreme Court in U'Ren v. Bagley, supra, without citation of authority, assumed as a premise the truism that every citizen is entitled to a fair and impartial trial, and that this right is sacred and constitutional. We concur in that view.

The declaration of section 18, article 6, is not in our opinion a limitation upon the power of the Legislature in the exercise of

this power to provide for impartial tribunals. If the "interest" which is therein mentioned as a disqualification is considered to have been employed in the sense of pecuniary interest only, then it serves to indicate one of the sources of partiality in! a judge, and the enumeration of relationship to either of the parties, or that the judge had been counsel in the case, or had presided in the trial thereof in an inferior court are merely other sources of partiality of the judge.

We take it that, rather than exhausting the subject of sources of partiality which is so obnoxious to the administration of justice, the Constitution makers manifested an intention that these recognized dangerous sources of partiality were to be put beyond the possibility of legislative detraction in any legislative scheme of disqualification of judges on account of partiality.

So we need not now decide whether the Constitution makers used the phrase "or in which he has an interest" in the restricted sense of pecuniary interest.

■ We are not impressed with the contention that the statute in question is unconstitutional because of section 18 of article 6 thereof.

■ Respondent's counsel assert that there is a likelihood of flagrant abuse of the statute, in that it will be many times used for the mere purpose of delay, that the judges of other districts do not have time to continually try cases in districts outside of their own, and also give proper attention to the business of their own districts, and that by

repeated attacks upon the qualifications of the judges designated in a particular case it would be possible to exhaust the entire number of district judges in the state, thereby operating as a denial of justice. He who assails a statute on the ground of unconstitutionality must point to a particular provision of the Constitution which it offends. Such general criticism as the foregoing may be more properly addressed to the Legislature. We are not justified in declaring a statute unconstitutional merely because it offers an opportunity for abuses. Proposed Middle Rio Grande Conservancy District, 31 N. M. 188, 242 P. 683. As to delay, the argument of respondent perhaps proves too much, for it would apply also to the cases where the constitutional grounds for disqualification of judges are clearly involved. As to possible encroachment upon the time of the judges by being called upon to try cases outside of their resident districts, we note that the Constitution, by section 15 of article 6, contemplates that the public business may require the designation by the Chief Justice of any district judge to hold court in any district.

■ It is claimed that, even if valid legislation, the statute is not applicable to the proceedings in the case at bar, for the reason that, although this cause was not a "pending case" when the act was passed and approved, such case was pending when the statute became effective, and respondent invokes section 34, article 4, of the Constitution as follows: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."

Holding as we do that the disqualification of judges for certain causes, raising a pre-sumption of partiality, has been ever present in our Constitution, the act in question vital-izes such constitutional provision and does not change the rules of procedure. Before the statute was enacted, there existed no rules of procedure for the recusation of a disqualified judge nor for change of venue on the ground of interest of the judge. Theretofore, it was open to the parties to adopt any appropriate procedure for that purpose. A change in the personnel of the presiding judge of a court is an eventuality likely to occur during the pendency of causes, through disqualification, death, illness, ab-sence from the state or district, resignation, expiration of tenure, or congestion of litiga-tion, but we have never supposed that such changes affect the rights or remedy of party litigants or were within the inhibition of sec-tion 34 of article 4 of the Constitution against legislative changes of the rules of evidence or procedure.

For the reasons stated, the writ will be made absolute; and it is so ordered.

SADLER, HUDSPETH, and ZINN, JJ., concur.

WATSON, Chief Justice (concurring).

Unpersuaded of the unconstitutionality of the act, I concur. I wish to add a word, how-ever.

This statute is unusually liberal or lax. In my judgment, it threatens the speedy, effi-cient, and economical administration of jus-tice, particularly in criminal cases. Experi-ence may or may not justify my present an-ticipation of abuses to follow. If it should, the Legislature is fully competent to meet the situation; no doubt without my advice. Still it may not be out of place to couple with my approval of the beneficent purposes of the statute, as set forth in the opinion, the suggestion of the desirability of adding rea-sonable safeguards against abuse.