75 P.2d 338

STATE ex rel. SARTAIN v. PATTON, District Judge.

No. 4332.

Supreme Court of New Mexico.

Jan. 10, 1938.

Stonewall Pritchett and J. V. Gallegos, both of Tucumcari, for relator.

Reed Holloman, of Santa Fe, for respondent.

BICKLEY, Justice.

Mrs. Pauline D. Sartain, the person named as executrix in an instrument purporting to be the last will and testament of Paul R. Dodge, deceased, and so describing herself in the petition herein filed seeks by prohibition to restrain the honorable Harry L. Patton, as judge of the Ninth judicial district sitting within and for Quay county, from further proceeding in a matter pending before him. Alternative writ having been awarded upon filing and presentation of the relator's petition, the cause is now before us for final disposition upon the writ and answer, designated a return.

From the alternative writ it appears that the decedent left a last will and testament in which relator is named executrix and bequeathed a legacy. She petitioned for the probate of said instrument in the probate court of Quay county. Thereafter, and prior to probate of said instrument, one F. L. Beal, who had been appointed special administrator of the estate of decedent pending probate of his tendered will, filed in the district court of Quay county, over which respondent presides, a petition for the removal of the probate proceeding into the district court: 1929 Comp., § 34-422 et seq.

Thereupon, and prior to any action by respondent upon the petition for removal, the relator filed with the district clerk in the removal proceeding an affidavit of disqualification, signed and verified by her, pursuant to the provisions of Laws 1933, c. 184. At the same time relator also filed formal objections to the removal. The respondent announced that he would disregard the affidavit so filed and proceed with the hearing. The alternative writ was

issued by this court upon presentation of the petition herein as aforesaid.

The facts not being in dispute, the legal propositions relied upon by respondent to defeat the writ, although stated more extensively in the answer, may briefly be summarized as follows:

1. That the removal proceeding is not an "action or proceeding, civil or criminal" within the meaning of those terms as used in Laws 1933, c. 184.

2. That if it should be held the removal proceeding is an "action or proceeding, civil or criminal" as those terms are employed in Laws 1933, c. 184, still relator is not a party thereto within the meaning of the word "party" as employed in the statute.

3. That if otherwise available, the affidavit of disqualification was prematurely filed in that the probate proceeding is not yet pending in the district court, no order of removal having been entered.

These legal propositions put forward by respondent in his answer bring us to a consideration of the statute and its general aims and purposes. Unless limited by the language employed, the statute must be given effect in attainment of such aims and purposes. In State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511, 512, where the constitutionality of the statute was sustained against attacks there made upon it, we held it to be no invasion of the judicial power for the Legislature to prescribe that such power "shall not be exercised by judges who are believed by litigants to be partial"; and that "it is better that the courts shall maintain the confidence of the people than that the rights of judge and litigant in a particular case be served." The Legislature evidently felt it would inspire greater confidence in the courts to guarantee to every litigant the right to a trial of his cause before a judge whom he believed to be impartial; or, to state it differently, to lift from the courts the odium which might obtain were the litigant compelled to go to trial before a judge whom he believed to be prejudiced, whether actually so or not. With this statement of the broad purposes underlying enactment of the statute in question we remain in full accord, yet we think it has no application to the present situation.

For convenience of the reader we quote portions of the statutes involved, with portions thereof italicized to give emphasis to our argument.

Chapter 184, Laws 1933, portions of which we have italicized for emphasis, is as follows:

"Section 1. Whenever a party to any action or proceeding, *civil or criminal,* shall make and file an Affidavit that the Judge before whom the action or proceeding *is to be tried or heard* cannot, according to the belief of the *party* to said *cause* making such affidavit, preside over the same with impartiality, such Judge shall proceed no further therein, but another Judge shall be designated for the *trial* of

such *cause* either by agreement of counsel representing the respective parties or upon the failure of such counsel to agree, then such facts shall be certified to the Chief Justice of the Supreme Court of the State of New Mexico, and said Chief Justice of the Supreme Court of the State of New Mexico, shall thereupon designate the Judge of some other District to *try* such *cause.*

"Sec. 2. Such affidavit shall be filed not less than ten (10) days before the beginning of the term of Court, if said *case* is at *issue.*"

Sections 34-422 and 34-423, N.M.S.A. 1929, which was chapter 40, sections 1, 2, Laws 1919, with italics for emphasis, read as follows:

"34-422. That any person interested in the administration of any estate, the inventory of which shall disclose assets belonging to said estate exceeding the sum of two thousand dollars, may at any time in the course of the proceeding in the probate court *appeal the administration of the estate* to the district court by filing a *verified petition* in the district court alleging that controversies and disputes will arise concerning the rights of persons interested in the administration of said estate or in the distribution of the assets thereof, which will cause said administration to be appealed from the probate court, and that said appeal is prayed to avoid expense and delay and in aid of a speedy settlement and adjudication of said estate

and the rights of the persons interested therein.

"34-423. Upon the filing of said petition the district judge may *in his discretion* issue an order directed to the clerk of the probate court, directing him forthwith to deposit in the office of the clerk of the district court all original papers and records or certified copies of records in the probate court relating to said estate; and thereupon such administration shall be docketed as other causes in the district court and said court shall proceed with the administration of said estate and upon the request of any interested person shall try de novo any issue upon which the probate court may have rendered a decision within ninety days prior to the filing of said petition in the district court."

The first thing which impresses us is that the sections of the law last quoted do not provide for a *civil proceeding,* and, of course, not a criminal proceeding, and that it is not a *cause to be tried or heard* and that it is not a cause to be presided over, that it is not a *case* to be tried and that it is not a *case* in which there are issues contemplated.

It must be apparent that the Legislature did not contemplate the disqualification of district judges by affidavit in all actions or proceedings. The statute only authorizes the filing of the disqualification affidavit in a civil or criminal action or proceeding.

It is not to be doubted that ordinarily "proceeding" may mean something different from "action." But in the present

statute this makes little difference, because, besides being limited to civil or criminal proceedings, the action or proceeding is further characterized by other words in the statute which make them to all intents and purposes the same. That is, it must be a civil (or criminal) action or proceeding which is a "cause" or a "case."

At this point it will be well to quote the definitions of "cause":

"In practice. A suit or action; any question, civil or criminal contested before a court of justice." Cyclopedic Law Dictionary.

In 11 C.J. at pages 37, 38, the word "cause" in a legal sense is defined as meaning: "The subject of difference between the parties, *as settled by the pleadings* whether oral or written; sufficient charges, notice thereof, and a hearing;"

In the same paragraph on page 37 "cause is defined as any question civil or criminal, contested before a court of justice," and it has been said in a legal sense "action," "suit," and "cause," are convertible terms. Words and Phrases, Second Series, p. 597, citing Bouvier's Law Dictionary and Anderson's Law Dictionary: "A 'cause' is a suit, action, or any question, civil or criminal contested before a court of justice."

We think that is the sense in which the Legislature used the term "cause." The word "cause" standing alone might not necessarily have the signification that a proceeding does not ripen into a cause un-

til there are two or more parties to it. But the context shows that the Legislature did not use the word "cause" in any exceptional meaning because section 2, as above quoted, shows that it contemplated the kind of a cause or case which was put at issue by the parties to it. Section 1 clearly indicates that the kind of cause or case that is being spoken of is one in which there is more than one party. The section speaks of "the respective parties."

Furthermore, the statute for appealing or removing the proceeding from the probate court to the district court seems to us to be much more in the nature of a summary and special proceeding than it does a civil action or proceeding amounting to a case or cause. It is apparent that the district court can entertain the petition for removal at any time irrespective of terms of court, and in vacation. There are no provisions in the statute requiring the matters set forth in the petition to be put at issue and no opportunity given for putting such matters at issue. This is perhaps the reason that the statute requires the filing of a "verified petition" in order to bring up the question of removal. Ordinarily in civil actions or proceedings pleadings do not have to be verified. So it seems to us the Legislature has authorized the district court to proceed in a summary way upon the *verified petition* and the inventory, because the statute says that the district court is authorized to remove upon a proper petition an estate "the inventory of which shall disclose assets belonging to said estate exceeding the

sum of $2,000.00." The court is not required to take evidence as to the value of the assets. If the inventory discloses assets exceeding the sum of $2,000, that satisfies one jurisdictional requirement. Furthermore, the statute does not say that the verified petition must state facts to prove that controversies and disputes will arise and delays occur and expense be avoided, etc. We apprehend that, under the statute, as soon as an administrator is appointed and an inventory filed, a verified petition could be filed with the district court long before anybody could know positively and accurately what disputes and controversies might arise and expense and delay be incurred, so it would seem that this allegation of the petitioner would be largely taken on faith as a statement under oath of opinion. We assume that the district court could investigate in order to determine that the petitioner is a "person interested in the administration of the estate." But this might be ascertained in a summary manner without a trial or hearing.

Section 105-101, N.M.S.A.1929, provides: "There shall be in this state but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action, and the party thereto complaining shall be known as the plaintiff, and the adverse party as the defendant."

This is in accordance with the common understanding of the word "civil cause" "case" or "suit" and, if we go to the word "proceeding" taken in connection with the use of the word "cause" in the same section, "proceeding" must be deemed to be such a proceeding as is a civil proceeding for the enforcement or protection of private rights and the redress or prevention of private wrongs in a court of justice in which there is a party plaintiff and a party defendant.

By the removal statute no process is required to be issued or served, no adverse parties upon whom notice is to be served, no pleadings except the petition required, and thus no issues to be made up.

Perhaps the Legislature in enacting the disqualification statute assumed that there may be instances where the trial judge may not be able to preside over a trial with impartiality for the reason that he is partial to the party adverse to the party filing the disqualification affidavit, as well as instances where he could not preside with impartiality because he was biased *against* the party making the affidavit. Also the Legislature may have thought that even a judge who was prejudiced against a petitioner in an ex parte proceeding could give him a fair and impartial hearing providing that there was not anybody opposing his interest. These are mere speculations as possibly accounting for the fact that the Legislature did not in terms make the disqualifying affidavit statute pertain to ex parte proceedings. It is unimportant what the Legislature's reasons are if it is clear that they made

such statute applicable to adversary proceedings only, but the foregoing suggests at least that the danger from the misdoings of an unfair and partial judge are less ominous in ex parte proceedings.

From the disqualification by affidavit statute, it is to be observed that, in order to disqualify a judge, the party to the action, proceeding, or cause or case must make an affidavit "that the Judge before whom the action or proceeding *is to be tried or heard* cannot, * * * preside over the same with impartiality." Laws 1933, c. 184, § 1. Now if we turn to section 34-423 of the Code, we find that upon the filing of the verified petition for removal of the probate proceeding "the district judge may in his discretion issue an order" directed to the clerk of the probate court (to remove the proceeding to the district court).

We have many illustrations of how one court is required to assume jurisdiction of proceedings upon removal from another court. A familiar definition of appeal is the removal of a case from an inferior court to a reviewing court. Ordinarily the reviewing court has no discretion as to assuming jurisdiction. Doubtless this court would have no discretion to decline jurisdiction of an appeal to it. As we recall the procedure before some of the administrative boards such as the Tax Commission and the Corporation Commission, when decisions are made by these boards, parties feeling themselves aggrieved by the decisions may remove by certiorari to the district court and to the Supreme Court, respectively, and if the attempted removal has been in accordance with the statutory procedure there is nothing for the courts to which the causes are removed to do except assume jurisdiction.

It sometimes happens, however, that courts have a discretion as to whether they will assume jurisdiction of a cause or over the parties. Mr. Renzo D. Bowers, a member of the New Mexico Bar, formerly residing in Roswell, who is a law writer of ability, has written a work entitled "Judicial Discretion of Trial Courts." He devotes an entire chapter (chapter 3) to the question of "discretion in assuming jurisdiction of causes." The whole chapter can be read with interest and profit, but we will quote merely enough of the text to disclose a background of law which indicates that the Legislature, in the enactment of chapter 40, sections 1, 2, Laws 1919, sections 34-422, 34-423, was familiar with the proposition that a discretion could be reposed in courts to assume jurisdiction or not, according to the circumstances of a particular case as affected by policy and even by convenience. Mr. Bowers says in section 30 of his work: "It would seem, on first thought, that as to the subject-matter of a given action at law the statute either has or has not endowed a court with the power and duty to take cognizance of and decide the matter involved, and that such power and duty are so certain and absolute that nothing is left to the discretion of the court itself in determining whether it will or will not act.

And such is absolutely true. But a distinction has been definitely drawn—drawn and enforced by the courts themselves—between the existence of judicial jurisdiction and the exercise of that jurisdiction. The fact of jurisdiction over the subject-matter of a particular action may be unquestioned, and its exercise be refused for one or more of the reasons to be shown as the discussion of this chapter proceeds. In those cases where decision is made by the court itself as to whether or not it will exercise its power to hear and determine the matter presented, or sought to be presented, the choice between acting or refusing to act rests upon and proceeds from the power of decision known as judicial discretion."

A valid statute may prescribe the instances in which jurisdiction *shall* be assumed by the courts of the state, and when this is so the provision is mandatory to the extent that nothing is left to the discretion of the courts in cases which fall within the province of the statute. In such cases, the sole function of the court preliminary to assuming jurisdiction is to construe the statute and to decide upon the sufficiency of the facts which are presented for the purpose of invoking such jurisdiction. These decisions can involve none of the elements of discretion.

We may not ignore the fact that our statute which provides for the removal of the administration of estates to the district courts while reposing *power* in the district courts to remove such administration nowhere imposes the *duty* to so remove. The language "upon the filing of said petition the district judge may *in his discretion*" remove such administration is distinctly contrary to a mandate that he do so. The language is distinctly permissive.

Now what is it that "a party" to a civil proceeding has to fear in the administration of the estate by a particular district judge? We apprehend it is that such district judge cannot preside over the trial of "controversies and disputes (which) will arise concerning the rights of persons interested in the administration of said estate or in the distribution of the assets thereof." The administration of estates is not a cause or a case, or a suit or civil proceeding. Such administration is generally regarded as separated from the common law and chancery courts and is recognized as a distinct and independent branch of the law, destined to achieve for itself a sphere sui generis, based upon its own inherent principles. See Woerner's "American Law of Administration", 3d Ed., § 11.

We do not doubt that in the administration of an estate removed to the district court particular "controversies and disputes will arise" in which some party may doubt the impartiality of the judge, and we assume without deciding that under such situations such a party may effectively file a disqualifying affidavit. Also we assume without deciding that, if a district judge has exercised his power to remove to his court the administration of an estate up-

on what appears to be a showing sufficient to invoke his discretion, a person interested in the administration of the estate may assail the jurisdiction of the district court on the ground of the absence of jurisdictional facts to warrant the exercise of discretion to remove. We go no further now than to decide that the relator has not presented a situation where, if he has any standing at all, it is appropriate for him to challenge the impartiality of a judge who has not yet exercised a discretion reposed in him to remove the administration of the estate to his court. The discretion to assume jurisdiction of the administration of an estate having once been exercised in favor of removal and the administration removed to the district court, it would seem to remain there until final settlement. If questions of policy and local conditions enter into the exercise of the discretion of the district judge to remove the administration of an estate pending in a probate court of a county in his district into the district court, it would seem eminently more logical and consistent that such questions be resolved and discretion exercised by the resident district judge than it would be to have a judge of some other district by force of the disqualification statute brought in and who might, contrary to the ideas and wishes of the resident judge, dump the administration of the estate into the reluctant lap of such resident judge. Such possible results incline us away from the views of relator as to the meaning of the statute.

It follows from what has been said that the alternative writ of prohibition should be dissolved, and it is so ordered.

BRICE, J., concurs.

ZINN, Justice (specially concurring).

I concur in the result arrived at by Mr. Justice BICKLEY. My concurrence, however, is not to be deemed as an agreement or concurrence in his opinion or the reasoning therein contained.

I believe that Laws 1933, c. 184, is available to a party in a proceeding to remove or "appeal" a probate proceeding to the district court in the method provided by 1929 Comp.St., § 34-422 et seq., just as much as any other proceeding, whether it be denominated civil or special. I am satisfied that the Legislature, when it enacted chapter 184, did not contemplate a group of "proceedings" wherein the presiding judge might be prejudiced or biased and permit litigants to disqualify the judge in such cases only, and deny the right in other "proceedings" even though the judge be biased or prejudiced.

We said in State ex rel. Simpson v. Armijo, 38 N.M. 280, 31 P.2d 703, 704: "If the enactment of this law is the declaration of a policy that our courts must be freed from suspicion of unfairness and is grounded upon the truism 'that every citizen is entitled to a fair and impartial trial, and this right is sacred and constitutional, State ex rel. Hannah v. Armijo, supra,' such right is as sacred to a litigant in a

special proceeding or one cited for contempt as it is to a litigant in a tort or contract action," and we held: "When the Legislature enacted into the law the word 'proceeding,' it must be assumed that it had in contemplation . contempt proceedings as well as all proceedings whatsoever, which might be held not to fall within the denomination of actions."

If plainer language be needed than the above to indicate that chapter 184 is applicable to any and every kind of action, proceeding, suit, or even "matter" that may be properly *litigated* before a district judge, then I am at fault, inasmuch as I wrote the opinion for the court in the State ex rel. Simpson v. Armijo Case.

At the present time the proceeding instituted in the district court of Quay county wherein F. L. Beal, the special administrator, seeks to remove the probate proceeding to the district court as provided by section 34-422 et seq., it is purely ex parte in so far as the relator is concerned, and is at this time not an adversary proceeding. The affidavit of disqualification was prematurely filed in that the probate proceeding is not yet pending in the district court, because no order of .removal has been entered. The statute, section 34-422, does not contemplate an adversary proceeding. No notice to any party is provided for or required. If the jurisdictional grounds for removal appear on the face of the petition, the district judge can only exercise a legal discretion and enter his order to remove.

If, however, a fraud has been imposed upon the court by the petitioner and the jurisdictional grounds for removal actually do not exist, or a mistake has been made and an order of removal has been entered upon a petition of a party who has no standing in court, then a motion to remand might be considered. Upon such a motion being filed, necessary parties being noticed to appear, an issue is raised. The issue is made up if the motion to remand is resisted. At that time, the relator, if she be the movant for remand, could file her affidavit of disqualification. In other words, until a motion to remand has been filed the statute providing for the removal of probate proceedings to the district court does not contemplate that the proceeding will produce an issue or an adversary proceeding. Until, in an orderly manner, an issue is made or it becomes a proceeding in which an issue is contemplated, no affidavit of disqualification may be effective.

To hold otherwise would lead us, logically, to permit a prospective respondent in mandamus, injunction, or prohibition to file an affidavit of disqualification against the judge of the district who is about to issue an order to show cause upon a proper complaint. The irreparable harm to permit that to be done is obvious. Carrying the analogy to its final and absurd conclusion, we would be led to hold that a prospective defendant, upon hearing he may be sued, could file an affidavit of disqualification even before a complaint has

been filed. I concur in the conclusion reached by Justice BICKLEY and hold that the writ of prohibition in this case should be denied.

SADLER, Justice (dissenting).

The writ should be made permanent. The removal proceeding is no less adversary today with relator's written protest against removal on file presenting issues both of fact and law than it will be tomorrow upon motion to remand, if removal should be ordered in the meantime. Of course, the removal statute contemplates an ex parte hearing; but it does not prohibit an adversary one. When it becomes adversary, even before removal, the disqualification statute applies.

We held in State ex rel. Gandert v. Armijo, 41 N.M. 38, 63 P.2d 1037, that the procural by petitioner of the ex parte order for recount of votes in certain election districts rendered untimely, within the doctrine of State ex rel. Shufeldt v. Armijo, 39 N.M. 502, 50 P.2d 852, a later affidavit by him seeking to disqualify the judge signing such order at his instance. If the discretion, though the proceeding be ex parte, is of sufficient importance that to procure its exercise will deny to the party invoking it the right later to disqualify the judge, it is equally effective to give to the party against whom its exercise is sought the right to forestall such exercise by the filing of an affidavit when his appearance has converted the proceeding from an ex parte into an adversary one.

The situation is not the same as where the trial judge, at the instance of a party later filing an affidavit, signs an order to show cause why a temporary restraining order should not be issued. In State ex rel. Tittmann v. Hay, 40 N.M. 370, 60 P.2d 353, such an order had been procured by the party who later disqualified the judge by affidavit. But, as we observed in State ex rel. Gandert v. Armijo, supra, that circumstance was not relied upon as a ground of untimeliness in the case as presented to us. We further pointed out in the Gandert Case that there was a noticeable difference between a mere order to show cause and the situation presented in the instant case, as well as in the Gandert Case, in that in signing an order to show cause no relief whatever is granted, whereas, in the case at bar, as was true in the Gandert Case, the petition favorably acted upon does award positive relief. Indeed, in the case at bar an order of removal grants all the relief sought by the petition filed.

No weight is to be attached to the fact that the *probate proceeding* has not yet been transferred or removed into the district court. This is an attempt to disqualify the judge in the *removal proceeding*. No one can dispute that it is pending in the district court. As a civil proceeding the disqualification statute is applicable. In view of our previous statements of the broad purpose of the disqualification statute, Laws 1933, c. 184, as recited in the opinion of Mr. Justice BICKLEY in the case at bar, I am unwilling to give to the statutory words extending its application

to "any action or proceeding, civil or criminal," a narrow or technical meaning. I cling to the belief expressed by us in State ex rel. Simpson v. Armijo, 38 N.M. 280, 31 P.2d 703, that:

"When the Legislature enacted into the law the word 'proceeding,' it must be assumed that it had in contemplation contempt proceedings *as well as all proceedings whatsoever, which might be held not to fall within the denomination of actions.*" (Italics supplied.)

"Statutes disqualifying judges for designated causes will be liberally construed." 33 C.J. 989, § 129, "Judges."

In re Jackman's Will Case, 27 Wis. 409, involved a change of venue statute. It was sought to confine it to "actions" and "civil actions." The court said: "We do not suppose any restricted or technical meaning is to be given to that term as here used. It is broad enough in its signification to include this proceeding for the probate of a will, and the whole reason and object of the statute will be most fully satisfied by holding that it applies to it."

Mr. Justice BICKLEY and Mr. Justice BRICE incline to the. view that the disqualification statute is *never* applicable to the removal proceeding. Mr. Justice ZINN would permit the relator to disqualify the judge upon a motion to remand. Hence, upon discharge of this writ, if removal be ordered, we may reasonably expect to learn of another judge hearing a motion to remand or proposing to do so. Not unlikely the case will be right back with us on another prohibition proceeding. Such an anomalous situation could scarcely have been a matter of legislative intention.

Notwithstanding the view advanced in the opinion of Mr. Justice ZINN that the affidavit here filed is premature, some very practical district judge faced with a situation like that here shown may decide to hear the protest before ordering a removal. He may prefer, if there be good reason against it, to leave undone that which ought not to have been done. At least, he may wish to hear the parties before taking action. If he does, and orders removal, may the protestant, having lost at a hearing before removal, disqualify the judge on a motion to remand? Certainly not, if the Shufeldt decision is to stand. And certainly he can if an affidavit filed before removal is premature and hence a nullity. If power in the district judge to permit an adversary, proceeding before removal be conceded, and I think his power so to do is unquestioned, then the efficacy of this affidavit is established.

Whether the mere filing of an affidavit in a probate matter would oust the resident district judge of jurisdiction to sit at large in the administration proceeding is not before us. It will raise a serious question when properly presented. The object of the statute would seem to be served if the effect of an affidavit so filed were confined to removing the resident

judge from sitting in matters in which affiant's interests are to be affected. We are not now called upon to decide the question.

I thoroughly disagree with the conclusion of Mr. Justice BICKLEY and Mr. Justice BRICE that the removal statute, 1929 Comp., § 34-422 et seq., reposes in the district judges of the state an arbitrary and uncontrollable discretion in the matter of removals. The discretion which the district judge may exercise lies in determining whether grounds of removal exist. If they do, then, of course, the judge must order removal. He has no discretion to refuse it. Even if the law were as contended in this regard, it would be just another reason for holding the disqualification statute applicable. For a litigant to be unable to remove a judge believed to be prejudiced, particularly when his decision is to be final and not open to review, is scarcely calculated to support the philosophy of disqualification statutes like ours as appraised in our first decision under the statute, to wit: "The stimulation of public confidence in the integrity of the judiciary demands that the judge be not only actually fair minded, *but above all suspicion to the contrary.*" State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P. 2d 511, 515. (Italics supplied.)

The substituted judge, upon disqualification of the resident judge, as suggested, may be in a position (and contrary to the latter's wishes) to "dump the administration of the estate into the reluctant lap of such resident judge." But I apprehend it to be not contrary to the controlling legislative wish as read from the statute. I can more readily think of the Legislature as intending this, than as conferring power on a district judge to deny removal arbitrarily, capriciously, and for no reason whatever.

The relator is entitled to an order for a permanent writ. Because of a contrary conclusion by the majority, and for the reasons given, I dissent.

HUDSPETH, C. J., concurs.